UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAY HARNESS                                      CIVIL ACTION

VERSUS                                           NO. 10-3458

MICHAEL J. ASTRUE, COMMISSIONER                  SECTION "R" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Ray Harness, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Harness filed applications for DIB and SSI on November 24, 2008, alleging disability since June 2, 2008, due to diabetes and back problems as a result of an automobile accident on that date. (Tr. 77-83, 100). After his applications were denied, Harness requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 18, 2009. (Tr. 21-38). On November 17, 2009, the ALJ issued a

decision denying plaintiff's applications for benefits.  (Tr. 10-17).  After the Appeals

Council denied review on September 21, 2010, the ALJ's decision became the final

decision of the Commissioner for purposes of this court's review.  (Tr. 1-4).

II.     STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.     The ALJ failed to apply the proper legal standard to determine plaintiff's
       credibility.

B.     The ALJ's residual functional capacity assessment is not supported by
       substantial evidence because she failed to include all of plaintiff's
       limitations and failed to give controlling weight to the opinions of his
       treating sources.

C.     The ALJ's hypothetical question to the vocational expert is not supported
       by substantial evidence.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.     Harness has severe impairments consisting of lumbar herniated nucleus
       pulposus, cervical strain, mild degenerative joint disease and diabetes
       mellitus.

2.     He has the residual functional capacity to perform medium work, with the
       added nonexertional limitations of stooping only occasionally and avoiding
       concentrated exposure to wetness, humidity and hazards in the workplace.

3.     Although plaintiff's medically determinable impairments could reasonably
       be expected to cause the alleged symptoms, his statements concerning the
       intensity, persistence and limiting effects of these symptoms are not

2

credible to the extent they are inconsistent with the above residual functional capacity assessment.

4.     Harness is capable of performing his past relevant work as a dump truck driver and tractor-trailer driver.

(Tr. 12-17).

IV.   ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

3

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2008).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920;

---

[1] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

4

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

B.    Factual Background

Harness testified that his last job was driving a dump truck for A & G Trucking, which involved mostly sitting and driving, with occasional lifting of up to 50 pounds. (Tr. 24-25).  He said he worked for A & G Trucking for three weeks.

Plaintiff stated that he previously worked as a long-haul trucker for Great and Best Products for 15 years, transporting loads of produce between Louisiana and California, which was a 32-hour trip one way.  He stated that, pursuant to long-haul driving regulations, he drove for five hours, took a one-hour break, drove for five more hours and then slept for eight hours.  He said that he sometimes lifted boxes of produce that weighed 50 to 60 pounds.  He said he stopped working for Great and Best because his wife told him he had to choose between her and the job.  He testified that she had a point and that he chose to stay home after 15 years of being on the road.  (Tr. 26-28).

Harness testified that he does not miss being on the road and loves being at home with his family.  He said he is active in his church, where he is an usher.  (Tr. 28).  He stated that he cannot work because he cannot do the things he used to do.  He testified

6

that he is diabetic, but has not been able to take his medication regularly or be examined by a doctor because he cannot afford it.  He said he was only able to see a doctor for his back problems because he had been in an automobile accident.

Plaintiff stated that he has a lot of nieces and nephews and likes to spend time and play with them, and also likes to work in the garden, but he cannot do as much as he used to.  He said that he cannot mow the lawn and that his nephews do it for him in exchange for him cooking for them.  (Tr. 29).  He testified that he barbeques a lot and that food stamps are his only income.

Harness stated that he can lift about ten pounds and that he has lower back pain that he rates about 9, on a scale of 0 to 10, if he lifts more than that.  He said he experiences similar pain if he sits and drives, so he does not drive much anymore.  He testified that his right side goes numb if he drives for more than 20 to 30 minutes.  (Tr. 30).  He said he can only walk about one-quarter mile before he becomes dizzy because of his diabetes.  (Tr. 30-31).

Plaintiff stated that he gets some diabetes medication from his sister, because diabetes runs in his family, but he is unable to take the medication or to see a doctor regularly.  He testified that he put himself on a diet to help his diabetes and drinks a lot of water to keep his weight down, which helps to control his blood sugar.  He stated that he checks his blood sugar about twice a week and that it runs about 160, but it sometimes

7

goes up to 195.  (Tr. 31).  He testified that he tries to walk as much as he can to keep his blood thin and not clogged, but that sometimes he gets dizzy and cannot walk very far. He said he also gets dizzy if he stands for too long.

Harness stated that, on an average day, he spends most of his time around the house.  He testified that he tries to exercise a little and do the chores that his wife asks him to do, but that he lies down for about six hours each day.  (Tr. 32).  He said he worked for 28 years, was never a slacker and always wanted to take care of his family.

Plaintiff testified that he has back pain, gets dizzy and has to sit down halfway up the stairs when he tries to climb stairs.  He said he can sit for about 15 minutes before he has lower back pain. (Tr. 33).

C.    Vocational Expert Testimony

A vocational expert, Thomas Meunier, testified at the hearing that plaintiff's past relevant work as a dump truck driver was unskilled work at a medium exertional level[3] and his work as a tractor-trailer truck driver was also medium, but semi-skilled.  (Tr. 34).

The ALJ posed a hypothetical of an individual with the residual functional capacity to perform medium level work, with occasional stooping and no concentrated

---

[3]"Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c).  One who can perform medium work can necessarily also perform light and sedentary work.  Id.

exposure to wetness, humidity, dangerous machinery or unprotected heights.  Meunier testified that such a person could perform both of plaintiff's past relevant jobs.  (Tr. 35).

Plaintiff's attorney modified the hypothetical to include the claimant's ability to stand for only five minutes at a time, walk no more than one-quarter mile at a time, climb stairs rarely, lift no more than ten pounds and sit no more than 15 minutes at a time. Meunier testified that such a person could not perform plaintiff's past relevant work or any work at the light level or above.  (Tr. 36-37).  Plaintiff's attorney then added an additional limitation of the need to lie down for more than one hour each day.  Meunier said that the hypothetical individual could not perform any work.  (Tr. 37).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 14-15).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    Legal standard to determine plaintiff's credibility

The ALJ found that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

extent they are inconsistent with the ALJ's residual functional capacity assessment. Harness argues that the ALJ failed to follow the procedures of Security Ruling 96-7p because she did not consider the entire case record and did not give specific reasons for her credibility findings. Harness contends that the ALJ should have accepted his testimony about his physical limitations as credible because his diagnoses support the existence of his symptoms and limitations. For the following reasons, I find that the ALJ properly applied the law regarding plaintiff's credibility.

First, the mere diagnosis of an impairment does not establish a claimant's disability claims. Bordelon v. Astrue, 281 F. App'x 418, 421 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430, 431(5th Cir. 2006); Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)). Plaintiff "must show that [he] was so functionally impaired by [his diagnosed impairment] that [he] was precluded from engaging in any substantial gainful activity." Id. (emphasis added); accord Bordelon, 281 F. App'x at 421 (citing Hames, 707 F.2d at 165); Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992).

10

Pain may constitute a non-exertional impairment that can limit the jobs a claimant would otherwise be able to perform.  Carnahan v. Apfel, 247 F.3d 241, 2001 WL 43543, at *3 (5th Cir. 2001); Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Carter v. Heckler, 712 F.2d 137, 141-42 (5th Cir. 1983).  However, the mere existence of pain does not establish disability.  "Pain constitutes a disabling condition when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'"  Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994) (quoting Selders v. Sullivan, 914 F.2d 614, 618-19 (5th Cir. 1990)); accord Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). Subjective complaints of pain or other symptoms must be corroborated by objective medical evidence, Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss, 269 F.3d at 522), and such complaints may be discounted when the alleged symptoms are not consistent with the objective medical evidence.  Brown v. Astrue, 344 F. App'x 16, 21 (5th Cir. 2009); Hernandez v. Astrue, 278 F. App'x 333, 340 (5th Cir. 2008) (citing Anthony, 954 F.2d at 295); Dunbar v. Barnhart, 330 F.3d 670, 672 (5th Cir. 2003).

It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference.  Jenkins v. Astrue, 250 F. App'x 645, 647 (5th Cir. 2007) (citing Chambliss, 269 F.3d at 522); Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991); James v. Bowen, 793 F.2d 702 (5th Cir.

11

1986).  Whether an applicant is able to work despite some pain is within the province of the administrative agency, and the agency's determination should be upheld if supported by substantial evidence.  <u>Jenkins</u>, 250 F. App'x at 647; <u>Chambliss</u>, 269 F.3d at 522; <u>Jones v. Heckler</u>, 702 F.2d 616 (5th Cir. 1983); <u>Epps v. Harris</u>, 624 F.2d 1267 (5th Cir. 1980).

Regarding the effect of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p on an ALJ's credibility findings, the Fifth Circuit has held that the ALJ is bound to explain her reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'"  <u>Hernandez</u>, 278 F. App'x at 339 (quoting <u>Falco v. Shalala</u>, 27 F.3d 160, 164 (5th Cir. 1994)).  The ALJ has the responsibility to evaluate the credibility of witnesses, <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"  <u>Spruill v. Astrue</u>, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting <u>Falco</u>, 27 F.3d at 164).  Thus, the ALJ's credibility evaluation is entitled to <u>considerable deference</u> by this court.  <u>McKnight v. Astrue</u>, 340 F. App'x 176, 181 (5th Cir. 2009); <u>Bedford v. Astrue</u>, 236 F. App'x 957, 962 (5th Cir. 2007).  The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required.  <u>James J. Flanagan Stevedores, Inc. v. Gallagher</u>, 219 F.3d 426, 430

& n.8 (5th Cir. 2000) (citing <u>Falco</u>, 27 F.3d at 163); <u>Godbolt v. Apfel</u>, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.).

Here, the ALJ reviewed the entire record and explained at length why she found that Harness's subjective symptoms and limitations were not credible to the extent alleged.  The ALJ noted that Harness's subjective complaints were inconsistent with the clinical and objective findings, including the results of physical examinations by his treating physicians, which revealed only mild limitations in his cervical and lumbar range of motion, with mild to occasionally moderate muscle spasms, negative straight leg raising test, normal sensory examinations and gradual improvement in his pain symptoms after the motor vehicle accident on June 2, 2008; x-ray and MRI studies of his cervical and lumbar spine, which showed mild disc disease with no bony central canal or neuroforaminal[4] stenosis[5] or nerve impingement; his failure to comply with his diabetic medication regimen in the absence of evidence that his diabetes could not be controlled by medication; his failure to follow the recommendation of his treating neurosurgeon, Kenneth E. Vogel, M.D., for hospital admission for further diagnostic testing and, depending on the test results, possible future surgery; plaintiff's release from any further

---

[4]A foramen (pl. foramina) is a natural opening or passage, especially into or through a bone. <u>Dorland's</u> at 696.

[5]Stenosis is an abnormal narrowing of a duct or canal.  <u>Id.</u> at 1698.

care by his treating chiropractor, Stephen Tramuta, D.C., and treating physician, Jerome Kurpel, M.D., on March 17, 2009, less than 12 months after his alleged onset date, and their advice that he could return to normal activity; and the absence of any complaints of dizziness in the medical records.

A claimant's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations. Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren, 925 F.2d at 128); Austin v. Apfel, 205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999); Anthony, 954 F.2d at 295.

The ALJ also noted that plaintiff's earnings history was inconsistent with his testimony that he had worked for 28 years.  Harness's earnings record showed no work in 1996 or 2004, and annual earnings of less than $5,000 for 21 of his 37 work years. This record of less than full-time employment caused the ALJ to question whether plaintiff's continuing unemployment was actually the result of medical impairments and whether his exaggeration of his work history led to an inference that he also exaggerated his symptoms.

The ALJ complied with the legal standards for assessing plaintiff's credibility and adequately explained her reasons for finding his testimony about his symptoms and functional limitations not credible.  Accordingly, this assignment of error lacks merit.

### 2.    The ALJ's residual functional capacity assessment

At the fourth step of the sequential evaluation, the ALJ found that Harness has the residual functional capacity to perform medium work, with the added nonexertional limitations of stooping only occasionally and avoiding concentrated exposure to wetness, humidity and hazards in the workplace.  The ALJ found that plaintiff can perform his past relevant work within these parameters.  Harness argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence because she failed to include all of his functional limitations, failed to give controlling weight to the opinions of plaintiff's treating sources and impermissibly "substituted her opinion" for the opinion of his treating physicians.  I find that the ALJ followed the law and her conclusions are supported by substantial evidence.

> "The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."  When assessing a claimant's physical and mental abilities, the ALJ first assesses the nature and extent of the claimant's physical and mental limitations and then determines the RFC.  A determination of RFC is "based on all of the relevant medical and other evidence" in the record.  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."

15

Cline v. Astrue, 577 F. Supp. 2d 835, 847-48 (N.D. Tex. 2008) (quoting Perez, 415 F.3d at 461-62; Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985)) (citing 20 C.F.R. § 416.945(a)(3), (b), (c)); accord Moore v. Barnhart, 182 F. App'x 321, 322-23 (5th Cir. 2006) (citing Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. §§ 404.1545(a), 404.1546).

Plaintiff's contention that the ALJ failed to include all of his functional limitations in her assessment of his residual functional capacity is based on his argument, which I have already found to be meritless, that the ALJ erred in analyzing his credibility.  As discussed above, the ALJ's credibility findings are supported by substantial evidence.  The ALJ included in her residual functional capacity assessment all of the limitations that she found credible, based on the entire record.  This assignment of error lacks merit.

As to plaintiff's argument that the ALJ failed to give controlling weight to the opinions of his treating sources, he argues that the ALJ "failed to reconcile her findings with" Dr. Tramuta's December 11, 2008 "opinion" on a preprinted form from the Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles, that plaintiff was "permanently impaired." (Tr. 174).  Harness also argues that the ALJ erred by rejecting Dr. Vogel's March 11, 2009 opinion that plaintiff "was disabled for his current duties at this time."  (Tr. 299).

Generally,

> [t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. . . .
>
> . . . . [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  The treating physician's opinions are not conclusive.  The opinions may be assigned little or no weight when good cause is shown.  Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations and citations omitted).

The "opinion" of Dr. Tramuta on which plaintiff relies is contained in a preprinted form from the Louisiana Office of Motor Vehicles, which was completed by Dr. Tramuta so that Harness could obtain a mobility impaired license plate for his vehicle.  Dr. Tramuta checked off the box for "permanently impaired," which is defined on the form as having "a permanent or lifelong condition of mobility impairment from which little or no improvement or recovery can reasonably be expected."  Dr. Tramuta checked off as the reason for that assessment that Harness has "a diagnosed disease or disorder including severe arthritic, neurological, or other orthopedic impairment, which creates a severe mobility limitation."  (Tr. 174).

17

The state law that permits plaintiff to obtain a mobility impaired license plate so that he may park in spaces reserved for handicapped persons by obtaining the signature of a doctor on the appropriate form and paying a minimal fee, La. Rev. Stat. § 47:463.4, does not equate to a finding that he is "disabled" under the federal law that regulates awards of DIB and SSI.  As to decisions by other agencies regarding disability, the Commissioner's regulations provide that

> [a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.  We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. §§ 404.1504, 416.904; see also Chambliss, 269 F.3d at 522 ("A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies [are] different . . . ."); accord Vaught v. Astrue, 271 F. App'x 452, 454 (5th Cir. 2008); Barraza v. Barnhart, 61 F. App'x 917, 2003 WL 1098841, at *1 (5th Cir. 2003).  Thus, a determination by the State of Louisiana that Harness's impairments qualified him for a mobility impaired license plate, even if it could be considered a finding concerning his ability to perform basic work activities, is not binding on the ALJ.

Furthermore, Dr. Tramuta's "opinion" on the Office of Motor Vehicles form that Harness is "permanently impaired" fails to assess any particular degree or location of impairment or to explain the diagnoses, objective tests and clinical findings on which that statement is based.  A generic statement that Harness has "a diagnosed disease or disorder including severe arthritic, neurological, or other orthopedic impairment" adds nothing to the medical evidence that the ALJ did not already consider.  The ALJ found that plaintiff has severe impairments consisting of lumbar herniated nucleus pulposus, cervical strain and mild degenerative joint disease.  Because the opinion on the Office of Motor Vehicles form is conclusory and unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, the ALJ had good cause not to accept it.  <u>Newton</u>, 209 F.3d at 456.

Finally, even if the Office of Motor Vehicles form could be construed as Dr. Tramuta's opinion that Harness is unable to work, rather than merely an opinion that he qualifies for a mobility impaired license plate under state law, that statement is not a medical opinion and therefore is not entitled to any weight.  A physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act, because that is a determination that may be made only by the Commissioner.  <u>Frank v. Barnhart</u>, 326 F.3d 618, 620 (5th Cir. 2003); <u>Chambliss</u>, 269 F.3d at 522.

> [S]ome opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." . . . The doctor's opinion [that plaintiff could not work] was not a medical opinion within the meaning of the regulation.

Frank, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e), (1) & (e)(3)).

As to Dr. Vogel's opinion that plaintiff "was disabled for his current duties <u>at this time</u>" on March 11, 2009 (Tr. 299) (emphasis added), the ALJ was not required to give controlling weight to this opinion. First, Dr. Vogel's statement is limited to the time period that he rendered it, which was only nine months after plaintiff's alleged onset date, and does not establish a disability that "has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Dr. Vogel does <u>not</u> opine that plaintiff will not be able to work permanently or even for the next three months. Second, as discussed above, Dr. Vogel's opinion that plaintiff is disabled is a non-medical opinion on a legal issue reserved to the Commissioner and thus is not entitled to any weight.

Third, to the extent that the ALJ found Dr. Vogel's opinion inconsistent with the medical records as a whole, the ALJ's conclusion is supported by substantial evidence. The medical records reveal mild limitations in plaintiff's cervical and lumbar range of motion, with mild to moderate muscle spasms, negative straight leg raising test, normal

sensory examinations and gradual improvement in his pain symptoms during the course of treatment. X-ray and MRI studies of his cervical and lumbar spine showed mild disc disease with no bony central canal or neuroforaminal stenosis or nerve impingement. He received conservative treatment for nine months, was released from care by Drs. Tramuta and Kurpel on March 17, 2009, and effectively declined any further treatment by failing to respond to Dr. Vogel's recommendations.

The ALJ in the instant case did not impermissibly "substitute her opinion" for the medical evidence when determining plaintiff's residual functional capacity. That is a determination reserved to the ALJ. As she is obligated to do, Newton, 209 F.3d at 452, the ALJ weighed the medical evidence and resolved any conflict in favor of the opinion of Drs. Tramuta and Kurpel, when they released Harness from their care on March 17, 2009, that he could return to normal activity. Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)); see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

Substantial evidence therefore supports the ALJ's residual functional capacity assessment in the instant case.

21

3.    The ALJ's hypothetical question to the vocational expert

The ALJ posed a hypothetical to the vocational expert that accounted for plaintiff's age, education, work experience and functional limitations that the ALJ found credible.  The vocational expert testified that such a claimant could perform plaintiff's past relevant work as a dump truck driver and long haul truck driver.

At the hearing, plaintiff was represented by counsel, who questioned the vocational expert.  An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)."  Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994); accord Zimmerman v. Astrue, 288 F. App'x 931, 938 (5th Cir. 2008); Boyd v. Apfel, 239 F.3d 698, 706-07 (5th Cir. 2001).

As discussed in the preceding section of this report and recommendation and in the ALJ's opinion, substantial medical evidence does not support plaintiff's contentions that he can stand for only five minutes at a time, walk no more than one-quarter mile at a time, climb stairs rarely, lift no more than ten pounds, sit no more than 15 minutes at a time and must lie down for more than one hour each day, which are the limitations that

22

plaintiff's attorney included in his hypothetical questions to the vocational expert. Therefore, the ALJ was not required to incorporate such limitations in his hypothetical questions.  Zimmerman, 288 F. App'x at 938; Carey v. Apfel, 230 F.3d 131, 143 (5th Cir. 2000).  The vocational expert's testimony is substantial evidence on which the ALJ can properly rely to determine that plaintiff can perform his past relevant work.

Accordingly, this assignment of error lacks merit.

### CONCLUSION

The ALJ applied the proper legal standard to determine plaintiff's credibility.  The ALJ's residual functional capacity assessment is supported by substantial evidence.  The ALJ was not required to give controlling weight to the opinions of plaintiff's treating sources that either were not medical opinions or that conflicted with the substantial evidence of record.  The ALJ's hypothetical question to the vocational expert was supported by substantial evidence.

### **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

23

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this ___18th___ day of May, 2011.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

24